# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMION MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17−cv–76−NJR |
| ) | |
| JOHN BALDWIN, ) | |
| JACQUELINE LASHBROOK, ) | |
| LARUE LOVE, ) | |
| UNKNOWN PARTY, and ) | |
| DAVID J. GOMEZ, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jamion Martin, an inmate in Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks fees and damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers

to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

## The Complaint

Plaintiff filed his Complaint on January 25, 2017. (Doc. 1). It appears that Plaintiff's Complaint may be missing a page. The Statement of Claim starts with "Count 2." (Doc. 1, p. 5). Plaintiff has also filed two supplements to the Complaint (Docs. 7, 11), which normally the Court would not consider due to its policy of not accepting piecemeal complaints. The Court will consider them in this case, however, due to its concern about the potentially missing page. Nonetheless, Plaintiff is warned that all further attempts to amend any complaint piecemeal will be denied. Any amendments should contain all claims currently pending with new material underlined. *See* Local Rule 15.1.

A grievance attached to the Complaint, as well as Plaintiff's subsequent filings, make it clear that he believes that Lashbrook, Love, and other Pinckneyville administrative staff had an ongoing "illegal" policy or practice of refusing to submit inmates for their SSC and GCC good time credit. (Doc. 1-1, p. 7). Plaintiff believes he was entitled to SSG good time specifically because he completed a program, and thus was entitled to the credit as soon as he entered the

Illinois Department of Corrections ("IDOC"). (Doc. 7, p. 2). Plaintiff also completed the mental health program, which he believes entitled him to credits. *Id*. Plaintiff witnessed six to eight other inmates receive SSC as soon as they entered IDOC. *Id*. Plaintiff was told that he is not eligible for the credits due to his C-grade status, (Doc. 1-1, p. 7), but he believes that everyone else at the prison is eligible but him. (Doc. 1, p. 5). He has alleged that he meets all the criteria for an award of SSG. (Doc. 11, p. 2). He attributes his ineligibility to the fact that he filed complaints. *Id*. Lashbrook specifically told Plaintiff to stop "bitching" and "crying" and that he would get the credits when she was ready. (Doc. 7, p. 5). Plaintiff included correspondence from Gomez, Warden of Sheridan Correctional Center, dated September 8, 2016, telling him to address concerns about SSC with his counselor and reminding Plaintiff that SSC is discretionary. (Doc. 1-1, p. 1).

Plaintiff also alleges that Counselor Clay, the unknown grievance officer, Lashbrook, Baldwin, Doe, and Love violated Plaintiff's rights by refusing to provide grievances to inmates. (Doc. 1, p. 5). For example, Plaintiff recently requested two grievance forms from Clay, but Clay said "unless you tell me who you're writing up, and what for, I'm not giving you shit." *Id*. Plaintiff then wrote a grievance on regular paper, but it was rejected. *Id.* His oral complaints were ignored, and four subsequent requests for grievance forms went unanswered. *Id.* As a result of the defendants' actions, Plaintiff has suffered from severe headaches and other mental injuries. *Id*.

Plaintiff indicated in his Complaint that he filed a grievance regarding these issues on December 26, 2016. (Doc. 1, p. 4). The Complaint does not mention or address any other grievances. *Id.* Plaintiff attached a grievance, which is dated December 26, 2016, to his Complaint. (Doc. 1-1, pp. 7-8). The grievance has a counselor's response dated January 4, 2017.

(Doc. 1-1, p. 7). No other responses were included. On February 15, 2017, Plaintiff filed his "Motion in Addendum." (Doc. 11). That motion affirmatively states that "Plaintiff just received a grievance back from Defendant Baldwin's Office." (Doc. 11, p. 1). Plaintiff again attaches a copy of the December 26 grievance, this time with a stamp noting that it was received by the Administrative Review Board ("ARB") on January 17, 2017. (Doc. 11, p. 6). Plaintiff also includes a response from Ann Lahr of the ARB, dated February 1, 2017. (Doc. 11, p. 5).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into three counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. All three of Plaintiff's claims will be dismissed at this time:

> **Count 1 –** Lashbrook, Love, and other Pinckneyville administrative staff retaliated against Plaintiff in violation of the First Amendment for filing grievances by failing to award him SSC and GCC credit for which Plaintiff was eligible.
>
> **Count 2 –** Lashbrook, Love, and other Pinckneyville administrative staff deprived Plaintiff of his due process rights in violation of the Fourteenth Amendment when they failed to award him SSC and GCC credit;
>
> **Count 3 –** Clay, unknown grievance officer, Lashbrook, Baldwin, Doe, and Love violated Plaintiff's constitutional rights by denying him access to the grievance procedure.

As an initial matter, the Complaint does not explain what is meant by either SSC or GCC. Illinois statutes regulate sentence credits. *See, e.g.*, 730 ILCS 5/3-6-3. Specifically, the statute authorizes IDOC to "prescribe rules and regulations for awarding and revoking sentence credit." *Id*. The statute further provides "that the Director may award up to 180 days additional sentence credit for good conduct in specific instances as the Director deems proper. The good conduct

may include, but is not limited to, compliance with the rules and regulations of the Department, service to the Department, service to a community, or service to the state." 730 ILCS 5/3-6-3(a)(3). This is referred to as "good conduct credit." IDOC has promulgated regulations regarding Section 3-6-3(a)(3) that permit the Director to award credit for good conduct. 20 Ill. Adm. Code 107.210. One factor the Director may consider is "educational or program performance and achievements of the offender while in the custody of the Department." 20 Ill. Adm. Code 107.120(b)(2). The regulations describe this credit as supplemental sentence credit or "SSC." 20 Ill. Adm. Code 107.210(a). Thus it appears to the Court that SSC and GCC are interchangeable terms. The Court will use the term "SSC" for the remainder of this Order, because the Complaint uses that term with greater frequency.

Turning to **Count 1**, to succeed on a First Amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action. The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation, the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.*

In some cases, *Heck v. Humphrey* works to bar a plaintiff from pursuing claims based on the loss of good time credit where the successful lawsuit would necessarily imply the invalidity

5

of standing prison discipline. 512 U.S. 477 (1994); *Edwards v. Balisok*, 520 U.S. 641 (1997). *Heck* will not bar a suit where the § 1983 claim does not act to implicate the fact or duration of confinement. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Plaintiff has requested monetary damages here, not the good time credit he claims he is owed. He has not put the fact or duration of his confinement at issue, rather, the crux of the complaint is that he has not received credit that other similarly situated inmates have received due to retaliatory action on behalf of prison officials. *Johnson v. Litscher*, 260 F.3d 826, 831 (7th Cir. 2001) (finding that inmate's claim was not bared by *Heck* or required to be brought as a habeas action because the gravamen of the complaint was that the inmate was retaliated against, not whether he was guilty of disciplinary infractions). Additionally, and perhaps of greater relevance, Plaintiff has not alleged that he lost good time subject to a disciplinary proceeding. He has alleged that he was never awarded SSC as an incident of retaliation. Unlike due process claims, a retaliation claim will survive, even where a plaintiff has no liberty or property interest in the privilege at issue. *Cunningham v. O'Leary*, 40 F. App'x 232, 235 (7th Cir. 2002).

Here, although Plaintiff's allegations are somewhat vague, he has alleged that he made complaints and that he was denied SSC that he was otherwise entitled to as a result. It is not clear whether Plaintiff actually filed grievances against the defendants, but as Plaintiff also has alleged that he was kept from using the grievance procedure, the Court will assume that Plaintiff's complaints were sufficient to trigger First Amendment protection at the pleading stage. It is also clear to the Court that action that keeps an inmate from earning SSC could plausibly deter protected speech because the effect of the credits is to shorten an inmate's incarceration. Plaintiff also has alleged that he witnessed six to eight other inmates who were similarly situated receive credits, which plausibly implies a retaliatory motive. Plaintiff has stated a valid retaliation claim.

Unfortunately, however, it is clear from Plaintiff's filings that he did not exhaust his administrative remedies prior to filing suit, and the Seventh Circuit has been clear that the proper step in that situation is to dismiss the case without prejudice, even if a plaintiff exhausts his remedies while the suit is pending. *Perez v. Wisconsin Dep't. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The purpose of this requirement is to "keep the courthouse door closed" while the administrative process runs its course in order not to undercut the administrative process. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Failure to exhaust is an affirmative defense, and while typically the issue is one for defendants to raise, the Court may invoke an affirmative defense on behalf of an unserved defendant if it is clear from the face of the complaint that the defense applies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). The defense must be both apparent and unmistakable. *Walker*, 288 F.3d at 1010.

The Prison Litigation Reform Act ("PLRA") governs suits by prisoners. 42 U.S.C § 1997e. A prisoner is required to exhaust his remedies prior to filing suit. 42 U.S.C. § 1997e(a). The exhaustion requirement is dependent upon the procedures established by the State in which the prison is located. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Unexhausted claims may not be brought to court, *Id.* at 211 (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)), and "unless a prisoner completes the administrative process by following the rules the State has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Inmates confined in the IDOC must adhere to the Department's Grievance Procedures for Offenders in order to properly exhaust claims; anything less is a failure to exhaust. 20 Ill. Adm. Code § 504.810. Prisoners must first speak with their counselor about the issues they raise, and if

7

the dispute is not resolved, a formal grievance must be filed within sixty days of the events or occurrence with the grievance officer. 20 Ill. Adm. Code § 504.810(a). The grievance officer must then review the grievance and report findings and recommendations to the Chief Administrative Officer ("CAO"). 20 Ill. Adm. Code § 504.830(d). The prisoner then has the opportunity to review the CAO's response, and if unsatisfied, he may appeal to the Director through the ARB within thirty days of the Warden's response. 20 Ill. Adm. Code § 504.830(d); 20 Ill. Adm. Code § 504.850. The ARB is then required to provide a written report to the Director of its recommendation on the grievance, and the Director "shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.850(e), (f).

Plaintiff identified one grievance when asked about his attempts to exhaust his administrative remedies. Review of that grievance showed that Plaintiff had filed it very close in time to the initiation of this lawsuit. Specifically, Plaintiff initiated the grievance process on December 26, 2016, and then filed suit approximately one month later, on January 25, 2017. That would not be sufficient to invoke the defense, but for the fact that Plaintiff updated the Court on February 15, 2017. (Doc. 11). That motion specifically states that Plaintiff had "recently" received a response from the ARB. The fact that the motion was filed after the Complaint raises an inference that Plaintiff had not received a response prior to filing a complaint. And the grievance itself confirms it: the ARB's response is dated February 1, 2017, a week after Plaintiff filed this action on January 25, 2017. The defense is thus both apparent and unmistakable because the Complaint clearly identifies the sole grievance at issue, and Plaintiff filed a motion that both suggests in the body of the motion that he received the response after he

8

filed the complaint and includes an exhibit that shows that the response was written after the complaint was filed. Plaintiff filed suit too early, and this case will be dismissed without prejudice. Now that Plaintiff has exhausted his administrative remedies, he may file a new suit raising **Count 1**. *Ford*, 362 F.3d at 401.

Moving on to **Count 2**, it will be dismissed with prejudice for failure to state a claim. When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Here, Plaintiff has no liberty or property interest in SSC. The Director may decline to award the credit, even if Plaintiff meets the criteria, because the regulations give the Director sole discretion. 20 Ill. Adm. Code 107.142. Unlike the automatic day-for-day sentence credit, *see* 730 ILCS 5/3-6-3(a)(2.1), no prisoner has an entitlement to receive a supplemental sentence credit award. 730 ILCS 5/3-6-3(a)(3). Thus, Plaintiff has no liberty interest on which to base a civil rights claim. *Hill v. Godinez*, No. 13-cv-645-JPG, 2013 WL 3866673 at *2 (S.D. Ill. July 25, 2013); *See Shango v. Jurich,* 681 F.2d 1091, 1099–1100 (7th Cir. 1982) (prison regulation that established procedures for officials to exercise their discretion to transfer inmates from one prison to another did not limit that discretion or create a protected substantive liberty interest for inmate to remain in any given placement). *See also People ex rel. Braver v. Washington,* 724 N.E.2d 68, 73–74 (Ill. App. Ct. 1999) (inmate was not entitled to award of meritorious good time where such award rested within the discretion of the IDOC Director under [730 Ill. Comp. Stat. 5/]3–6–3; reversing grant of mandamus petition). Accordingly, Plaintiff's claim regarding the award of SSC is dismissed with prejudice for failure to state a claim upon which relief can be granted.

The Court has dismissed this claim on the presumption that Plaintiff was seeking an award of supplemental sentence credit pursuant to 730 ILCS 5/3-6-3(a)(3) based on Plaintiff's use of the term SSC, his exhibit referring his prior inquiry into his SSC status (Doc. 1-1, p. 1), and his allegations that he was entitled to such credit based on his participation in certain prison programs. The Court notes that the dismissal of **Count 2** does not bar Plaintiff from attempting to bring a claim in a subsequent suit based on non-discretionary award of credits, like those described in 730 ILCS 5/3-6-3(a)(2.1), provided that Plaintiff has exhausted any such claim.

**Count 3** also will be dismissed with prejudice for failure to state a claim. Plaintiff alleges that the defendants named in this count thwarted his access to the grievance process. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff has not even alleged that he was attempting to grieve about the conduct at issue in Count 1. This claim is insufficient as a matter of law, and it will be dismissed. The Court would dismiss Clay and Doe[1] in any event because they are not listed in the case caption pursuant to Federal Rule of Civil Procedure 10.

Plaintiff also has listed David J. Gomez as a defendant, but his statement of claim includes no allegations against him. Plaintiff's exhibit signed by Gomez regarding SSC does not properly allege anything; the communication does nothing more than instruct Plaintiff to ask his

---

[1] While Plaintiff did name an unknown party, he specified that it was the grievance officer. Thus the grievance officer is proper as a defendant in this count as listed, but including another Doe is presumably duplicative. This potential confusion is a good example of the wisdom behind Federal Rule of Civil Procedure 10.

counselor. The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Because Plaintiff has not listed Defendant Gomez elsewhere in his Complaint, he has not adequately stated claims against him or put him on notice of any claims that Plaintiff may have. For this reason, Defendant Gomez will be dismissed from this action without prejudice. The Court notes, however, that the Complaint lists Gomez as located in Sheridan, Illinois. The IDOC's website lists Gomez as the Warden of Sheridan Correctional Center. Sheridan, Illinois, and Sheridan Correctional Center are not located in the Southern District of Illinois; they are located in La Salle County, part of the Northern District of Illinois. Venue for federal civil rights actions brought under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b). According to that statute, such actions may be brought in (1) the judicial district in which any defendant resides (if all defendants are residents of the State in which the district is located), (2) a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred, or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. If Plaintiff means to suggest that Gomez is liable for events that happened at Sheridan Correctional Center, which is located in the Northern District, 28 U.S.C. § 93(c), he must bring a separate complaint in that district. Gomez is dismissed without prejudice to Plaintiff filing a suit against him in the Northern District.

### Pending Motions

Plaintiff's Motion to Clarify (Doc. 7) and Motion in Addendum (Doc. 10) are **GRANTED**. The motion to proceed *in forma pauperis* (Doc. 2) will be addressed in a separate order. As this suit will be dismissed without prejudice as prematurely filed, all other motions (Docs. 3, 4, and 10) are **DENIED as moot**.

### Disposition

**IT IS HEREBY ORDERED** that **Counts 2 and 3** are **DISMISSED with prejudice** for failure to state a claim upon which relief could be granted. **Count 1** is **DISMISSED without prejudice** for failure to state a claim upon which relief could be granted because Plaintiff failed to exhaust his administrative remedies. Should Plaintiff wish to proceed with Count 1, he must file a new lawsuit raising that claim now that his grievances have been exhausted. It is insufficient to file an amended complaint in this case. Plaintiff's filing fee remains due and owing. No strike will be assessed at this time. *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave

to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike" pursuant to 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  March 3, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**